**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| THOMAS EDWARD BYERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV103 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

Plaintiff, Thomas Edward Byers, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 10 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 12, 15; <u>see also</u> Docket Entry 13 (Plaintiff's Memorandum), Docket Entry 16 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

# I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of January 15, 2009.  (Tr. 145-57.)[1]  Upon denial of those applications initially (Tr. 42-59, 80-89) and on reconsideration (Tr. 60-79, 93-101), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 102-03).  Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 26-41.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 11-22.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-10, 199-202), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.  [Plaintiff] met the disability insured status requirements of the Act on January 15, 2009, the original alleged date of disability onset, but continued to meet them only through December 31, 2013.

2.  [Plaintiff] has not engaged in substantial gainful activity since the original alleged date of disability onset.

3.  The medical evidence establishes that [Plaintiff] has "severe" lumbar dysfunction and bilateral foot dysfunction, but that he does not have an impairment or

_____

[1] In a pre-hearing brief dated January 9, 2014, Plaintiff's counsel represented the alleged onset date as "1/15/09, to be amended to 02/17/13 (within 6 months of [Plaintiff's] 55th birthday)."  (Tr. 196.)  However, the ALJ noted in the decision that Plaintiff had made "no definitive amendment to the alleged date of disability onset," and that the ALJ "decided the issue of disability for the period from January 15, 2009, the original date of disability onset, through the date of [her] decision."  (Tr. 15.)

combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4. Additionally, . . . [Plaintiff] has not met his burden of establishing that he has any other "severe" impairment.

4. . . . [T]he testimony regarding the severity of [Plaintiff's] impairments and resulting functional limitations was not persuasive.

5. [Plaintiff] retains the residual functional capacity to perform "medium" work subject to the additional limitations discussed in the body of this decision.

6. [Plaintiff] is unable to perform his past relevant work.

7. . . . [Plaintiff] has a "limited" education, but is functionally illiterate.

. . .

9. Although [Plaintiff] is unable to perform the full range of "medium" work, he is capable of making the adjustment to work that exists in significant numbers in the national economy. . . . A finding of not "disabled" is therefore reached within the framework of [Medical-Vocational Rules 203.19 and 203.12].

10. . . . [Plaintiff] does not meet the provisions of . . . the "worn[-]out worker" rule.

11. [Plaintiff] was not under a disability, as defined in the [] Act, at any time through the date of this decision . . . .

(Tr. 21-22.)[2]

---

[2] As referenced in Paragraph 5 above, the ALJ's decision elsewhere found that Plaintiff "retain[ed] the residual functional capacity to perform 'medium' work requiring short and simple instructions and performing routine tasks with no reading or writing required, requiring frequent but not continuous balancing, kneeling, stooping, crouching, crawling or climbing of ramps or stairs, . . . not requiring working at unprotected heights, around machinery with dangerous parts, or climbing of ladders, ropes, or scaffolds . . . [and] including standing, sitting, or walking for 6 to 8 hours in a work day, frequently lifting and carrying as much as 25 pounds, occasionally lifting and carrying as much as 50 pounds, [and] pushing and pulling." (Tr. 18-19.)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there

is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id.

(quoting 42 U.S.C. § 423(d)(1)(A)).[3]    "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition."    <u>Id.</u>    "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled."    <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps:    "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work."    <u>Albright v. Commissioner of the Soc. Sec. Admin.</u>, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4]   A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is

---

[3]   The Act "comprises two disability benefits programs.  [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

[4]   "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ."  <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[6]

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ committed reversible error in failing to find that [Plaintiff] was disabled through application of the so-called 'Worn[-]Out Worker Rule'" (Docket Entry 13 at 9 (citing 20 C.F.R. §§ 404.1562(a), 416.962(a)) (bold font and underlining omitted));[7] and

2) "[t]he ALJ denied [Plaintiff] benefits in part because of non-compliance without showing that prescribed treatment would have restored [Plaintiff's] condition, or that the non-compliance was willful and unexcused" (<u>id.</u> at 20 (underlining omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 16 at 4-11.)

---

[6] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

[7] Pin citations refer to the page number appended to the bottom of each page upon filing in the CM/ECF system.

### 1. The Worn-Out Worker Rule

In Plaintiff's first issue on review, he faults the ALJ for "failing to find that [Plaintiff] was disabled through application of the so-called 'Worn[-]Out Worker Rule [('WOWR')].'" (Docket Entry 13 at 9 (citing 20 C.F.R. §§ 404.1562(a), 416.962(a)) (bold font and underlining omitted).) In particular, Plaintiff contends that, contrary to the ALJ's findings (see Tr. 20-21), the record established that Plaintiff (1) functioned at a "marginal" rather than a "limited" educational level (see Docket Entry 13 at 14-17); (2) performed only arduous, unskilled physical labor in the 35 years prior to his alleged disability onset date (see id. at 9-13); and (3) could no longer perform his past work because of severe impairments (see id. at 8-9). In addition, according to Plaintiff, "[t]he ALJ's failure to develop the record with respect to [Plaintiff's prior jobs] requires remand because substantial evidence does not support the ALJ's [WOWR] conclusion and this failure was prejudicial to the outcome of [Plaintiff's] case." (Id. at 10-11 (citing Carter v. Colvin, No. 4:12-CV-808-Y, 2014 WL 239104, at *5 (N.D. Tex. Jan. 22, 2014) (unpublished) (District Judge adopting recommendation of Magistrate Judge), and Desoria v. Colvin, No. 4:15-cv-04056, at *4 (W.D. Ark. Apr. 26, 2016) (unpublished)).) Plaintiff's arguments ultimately fall short.

"When an [ALJ] has reached the last step of the [SEP] . . ., he or she must consider two medical-vocational profiles which

9

direct decisions of disability before considering the [Medical-Vocational Guidelines]." Social Security Ruling 82-63, <u>Titles II and XVI Medical-Vocational Profiles Showing an Inability to Make an Adjustment to Other Work</u>, 1982 WL 31390, at *2 (1982) ("SSR 82-63"). As relevant here, one of those two profiles, the WOWR, applies to a claimant who:

> ha[s] no more than a marginal education[,] . . . work experience of 35 years or more . . . [of] only arduous unskilled physical labor, . . . [is] not working[,] and [is] no longer able to do th[at] kind of work because of a severe impairment(s).

20 C.F.R. §§ 404.1562(a), 416.962(a) (internal parenthetical citation omitted). If a claimant meets those requirements, the Commissioner "will consider [the claimant] unable to do lighter work, and therefore, disabled." <u>Id.</u>

In this case, the ALJ found as follows regarding whether Plaintiff qualified as a "worn-out worker":

> In concluding that [Plaintiff] is not disabled, [the ALJ] ha[s] specifically considered that at the hearing, [Plaintiff], through his attorney, asserted that [Plaintiff] was disabled pursuant to the [WOWR] . . . . However, a finding of disability pursuant to [the WOWR] requires that [Plaintiff] meet three specific criteria; i.e.[,] that he has a "marginal" education, that he has performed only arduous unskilled physical labor in the 35 years prior to the alleged date of disability, and that he is not working and is unable to return to that kind of work because of his impairments. In [Plaintiff's] case, he is not working and he is unable to return to his past relevant work, which as "heavy" work is reasonably considered to be arduous. However, the evidentiary record shows that in the 35 years preceding the alleged date of disability, [Plaintiff] has performed other work that would not be considered "arduous[,"] including as a forklift driver and as a textile worker. Moreover, the

> [VE] credibly testified that [Plaintiff's] past relevant
> work as a logger/sorter had [a Specific Vocational
> Preparation ("SVP")] of 3, indicating that it was low
> semi-skilled work. Consequently, his past relevant work
> was not "unskilled[."] Furthermore, [Plaintiff] has a
> "limited" education. Hence, [Plaintiff] meets none of
> the three specific requirements of [the WOWR]. Hence, he
> cannot be found disabled under the [WOWR]. Moreover,
> even if it were argued that his past relevant work as a
> logger/sorter was unskilled, he would then meet only one
> of the three specific requirements of [the WOWR], and a
> finding of disability would not be appropriate under that
> rule. Furthermore, even if it were argued that although
> he went to the 9th grade, his functional illiteracy
> equates to a "marginal" education level, [Plaintiff]
> would then meet only two of the three specific
> requirements of the [WOWR], and a finding of disability
> would still not be appropriate under that rule.

(Tr. 20-21.)

The ALJ erred in at least four respects regarding her evaluation of whether Plaintiff met the requirements of the WOWR. However, the ALJ's errors remain harmless under the circumstances of this case, see generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"), because, as explained in more detail below, the record conclusively establishes that Plaintiff did not work in arduous, unskilled physical labor for 35 years, as required to meet the WOWR standard.

First, with regard to Plaintiff's educational level, the ALJ found that, "[h]aving gone to the 9th grade, [Plaintiff] has a 'limited' education, but given his limited ability to read and

11

write, he is functionally illiterate." (Tr. 19; see also Tr. 20 (concluding, when evaluating the applicability of the WOWR, that Plaintiff possessed a "limited" education), 21 (finding that Plaintiff "has a 'limited' education, but is functionally illiterate").) The ALJ erred by finding that Plaintiff had a "limited" education. (Tr. 20.) An educational level exists for "[i]lliteracy," see 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1) (defining "[i]lliteracy" to "mean[] the inability to read or write . . . a simple message such as instructions or inventory lists even though the person can sign his or her name"), and, thus, the ALJ could not simultaneously declare Plaintiff functionally illiterate (see Tr. 19, 21)[8] and unable to perform jobs requiring reading and writing (see Tr. 18, 21), and rate his educational level as "limited" (Tr. 19, 20, 21), i.e., an educational level two steps above "illiteracy." See Shoulars v. Astrue, 672 F. Supp. 2d 801, 807 (E.D.N.C. 2009) (declaring ALJ's findings that a claimant qualified as functionally illiterate and maintained a limited education "internally inconsistent," and holding that the finding

---

[8] The record evidence supports the ALJ's finding of Plaintiff's functional illiteracy. For example, a disability examiner noted in a Disability Report that Plaintiff had difficulty with reading, and that the examiner read the application materials to Plaintiff. (See Tr. 170.) In addition, Plaintiff testified that he passed the North Carolina drivers license test because an individual read the test to him. (See Tr. 29-30.)

of functional illiteracy "foreclosed a finding that [the claimant] had a 'limited education'").[9]

Second, the ALJ's findings regarding the WOWR's requirement that Plaintiff remain unable to return to his past arduous, unskilled physical labor because of severe impairments contradict one another. The ALJ first determined that Plaintiff suffered from two severe impairments (see Tr. 16, 21), and also found Plaintiff "unable to return to his past relevant work, which as 'heavy' work is reasonably considered to be arduous" (Tr. 20 (emphasis added)), which would appear to indicate that Plaintiff had satisfied that requirement. However, the ALJ then noted that Plaintiff "me[t] none of the three specific requirements of [the WOWR]" (id. (emphasis added)). The ALJ's decision supplies no explanation for this apparent contradiction.

Third, the ALJ found that Plaintiff "performed . . . work that would not be considered 'arduous[,'] including as a forklift driver and as a textile worker." (Tr. 20.) However, the record does not contain any information regarding the exertional requirements of

---

[9] Moreover, the ALJ did not discuss Plaintiff's school records (see Tr. 15-22; see also Tr. 216-31), which preclude the decision's reliance on Plaintiff's completion of ninth grade to find he had a "limited" education (see Tr. 19 ("Having gone to the 9th grade, [Plaintiff] has a 'limited' education")). See 20 C.F.R. §§ 404.1564(b), 416.964(b) (allowing reliance on numerical grade level only when "there is no other evidence to contradict it" (emphasis added)). Those school records reflect that Plaintiff received very poor grades, including many failing grades, in eighth and ninth grades (see Tr. 219, 221), and that Plaintiff's teachers noted that Plaintiff had "trouble doing the work" and found "work very difficult" (Tr. 221). Additionally, Plaintiff achieved very low scores on standardized tests in the eighth and ninth grades (see Tr. 224-25), including one in which he ranked in the first percentile for reading (see Tr. 225).

Plaintiff's past work as a forklift driver and textile worker (see Tr. 177 ("Job History" section of Disability Report listing only job title, type of business, dates worked, hours per day, days per week, and rate of pay for forklift driver and textile worker jobs); see also Tr. 30 (reflecting ALJ's brief questioning of Plaintiff concerning his past work as a logger/sorter but not as a forklift driver or textile worker), Tr. 38 (showing VE's classification of Plaintiff's past work as a logger/sorter as "heavy work" but not addressing his jobs as a forklift driver or textile worker)).[10] In other words, substantial evidence does not support the ALJ's determination about the nature of Plaintiff's work as a forklift driver and textile worker.

Fourth, the ALJ erred by finding that Plaintiff's past work as a logger qualified as "low semi-skilled work," based solely on the VE's "testi[mony] that [Plaintiff's] past relevant work as a logger/sorter had an SVP of 3." (Tr. 20; referencing Tr. 38.) SSR 82-63 explains that "periods of semiskilled or skilled work may come within the provisions of [the WOWR] if it is clear that the skill acquired is not readily transferable to lighter work and

---

[10] Nor does the record establish that Plaintiff's past work as a forklift driver and textile worker affirmatively qualified as "arduous," although Plaintiff put the ALJ on notice at the hearing of his contention that he qualified as a worn-out worker. (See Tr. 40.) Thus, the ALJ erred by failing to adequately develop Plaintiff's full work history to enable the "[c]areful examination of the evidence" required by SSR 82-63, 1982 WL 31390, at *2. See Carter, 2014 WL 239104, at *5 ("The ALJ should have obtained additional information about the nature of the work [the plaintiff] performed at jobs prior to his [most recent, arduous] employment. . . . Such information would have established facts from which the ALJ could have determined if [the plaintiff's] [remaining] work met the 'arduous' criteria of the [WOWR].").

makes no meaningful contribution to the person's ability to work within his or her present functional capacity." SSR 82-63, 1982 WL 31390, at *3 (emphasis added). Here, the possibility remains that the skills Plaintiff acquired as a logger/sorter would not "readily transfer[] to lighter work," id., but the ALJ failed to consider that possibility (see Tr. 20), finding instead that "the issue of whether [Plaintiff] ha[d] 'transferrable skills' [wa]s not relevant" (Tr. 19).[11]

Notwithstanding the ALJ's above-described errors respecting the applicability of the WOWR, remand would serve no purpose here, as the record conclusively establishes that Plaintiff did not perform arduous, unskilled physical labor for 35 years prior to his alleged onset date. The ALJ did not specifically address the 35-year requirement in the decision, but instead based her determination that Plaintiff did not satisfy the WOWR on her findings regarding Plaintiff's educational level and allegedly non-

---

[11] Moreover, the ALJ failed to develop the record as to the job duties of Plaintiff's past work as a logger/sorter. (See Tr. 30 (reflecting Plaintiff's testimonial description of his logging duties as simply "[c]hain saw, cut trees").) The ALJ did not ask Plaintiff if the logging job entailed other duties beyond operating a chain saw to cut trees, such as whether he operated other equipment, whether he supervised other workers, or whether he completed forms or reports. (See id.) The VE declined to ask Plaintiff any additional questions about his past work, and then classified it "under the title of logger, sorter . . . [which] is heavy work with an SVP of 3." (Tr. 38.) The scant other vocational information in the record does not supply sufficient details to determine whether Plaintiff's prior job as a logger/sorter involved skills that would transfer to lighter work. (See Tr. 177 ("Job History" section of Disability Report listing only job title, type of business, dates worked, hours per day, days per week, and rate of pay for "chainsaw operator" and "log loader operator" jobs), 165-66 (listing annual earnings per employer from 1996 to 2011), 193 (indicating that Plaintiff "worked [a] log loader-knuc[k]le boom" at Mauldin's, "[l]oaded log[s]" at Overcash, and worked as a "[c]hainsaw operator" at Morrison).)

arduous and/or unskilled past work.  (See Tr. 20.)  Similarly,
Plaintiff did not address the WOWR's 35-year requirement in the
brief supporting his instant Motion, beyond asserting that he
"testified that he worked as a logger for 30 plus years." (Docket
Entry 13 at 14 (emphasis added) (citing Tr. 16).)[12]  In response,
Defendant contends that "Plaintiff testified that he ha[d] been a
'logger' for 30 years, which is five years short of the required 35
years to qualify under the [WOWR]."  (Docket Entry 16 at 7 (citing
Tr. 30, and Via v. Colvin, No. 5:12cv109, 2013 WL 3475233, at *4
(W.D. Va. Jul. 10, 2013) (unpublished) (District Judge adopting
recommendation of Magistrate Judge)).)  Additionally, Defendant
points out that Plaintiff's Disability Report, which reflects
logging work for only 16 years, contradicts his testimony that he
logged for 30 years.  (Id. (citing Tr. 30, 177).)

The WOWR requires 35 years of unskilled, arduous physical
labor prior to a claimant's alleged onset date of disability.  See
20 C.F.R. § 404.1562(a), 416.962(a).  The WOWR contains that 35-
year durational requirement to "assure[] that the [claimant] has a
long-term commitment to work which is arduous and unskilled."  SSR
82-63, 1982 WL 31390, at *3.  Moreover, "[w]hile there is room for

---

[12] As support for that assertion, Plaintiff cited to the portion of the ALJ's
decision in which the ALJ summarized Plaintiff's testimony.  (See Docket Entry
13 at 14 (citing Tr. 16).)  The ALJ noted that Plaintiff "stated that he had
worked in logging for 30 years" (Tr. 16 (emphasis added)), not "30 plus years"
(Docket Entry 13 at 14 (emphasis added)).  Moreover, Plaintiff actually testified
that he had "been in logging for 30 years."  (Tr. 30 (emphasis added).)
Furthermore, Plaintiff does not otherwise explain the basis of his assertion that
he testified to logging for "30 plus years."  (Docket Entry 13 at 14 (emphasis
added).)

16

judgment in determining whether the criteria of [the WOWR] are met, judgment cannot be used to substitute for basic documentation, to broaden the intent of the [WOWR], or to disregard specified criteria." Id. (emphasis added).

Plaintiff alleges disability since January 15, 2009, thus establishing the relevant, 35-year period as from January 15, 1974, to January 15, 2009. Plaintiff's earnings records reflect that he generated income in each of the years from 1974 to 2008 except 2000, which amounts to 34 years. (See Tr. 158, 164, 167-68 (indicating that report reflects all income earned by Plaintiff since 1936, which predates Plaintiff's year of birth).)[13] Even assuming that every dollar Plaintiff earned from 1974 to 2008 derived from arduous, unskilled work, his earnings record still falls one year short of the 35-year requirement.[14] Nor could the ALJ exercise any judgment "to disregard specified criteria," such as the 35-year requirement, SSR 82-63, 1982 WL 31390, at *3. See Via, 2013 WL 3475233, at *5 (finding ALJ did not err by omitting discussion of WOWR, where "the record demonstrate[d] that [the plaintiff] actually worked a maximum of only 31 years, and arguably as few as 29," and the plaintiff "acknowledged a work history of 34

---

[13] Plaintiff testified that he only worked two days as a logger in 2011 (see Tr. 33), and that his employer told him he "was just too slow" (Tr. 30).

[14] In addition, Plaintiff only reported income for one quarter in 1974, two quarters in 1975, three quarters in 1991, and one quarter in 1992, resulting in an additional two years and three months during the relevant period when he did not engage in arduous, unskilled work. (See Tr. 164, 167-68.)

years and 6 months prior to his onset date, which, itself, falls short of meeting the requirements of the [WOWR]").

Because the record <u>conclusively</u> establishes that Plaintiff did not perform unskilled, arduous physical labor for <u>35 years</u> prior to his alleged onset date, the ALJ's errors respecting the criteria of the WOWR amount to harmless error and, thus, Plaintiff's first assignment of error ultimately warrants no relief. <u>See generally Fisher</u>, 869 F.2d at 1057 (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

## 2. Failure to Seek Treatment

Lastly, Plaintiff maintains that "[t]he ALJ denied [Plaintiff] benefits in part because of non-compliance without showing that prescribed treatment would have restored [Plaintiff's] condition, or that the non-compliance was willful and unexcused." (Docket Entry 13 at 20 (citing 20 C.F.R. §§ 404.1530, 416.930, and Social Security Ruling 82-59, <u>Titles II and XVI: Failure to Follow Prescribed Treatment</u>, 1982 WL 31384 (1982) ("SSR 82-59")) (underlining omitted).) In that regard, Plaintiff argues that "the ALJ should not have discounted [Plaintiff's] subjective complaints on the basis of the failure to seek medical treatment when [Plaintiff] has asserted – and the record does not contradict – that he could not afford such treatment." (<u>Id.</u> at 22 (citing

Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986)).)  In addition, Plaintiff faults the ALJ for failing to "allow for the fact that [Plaintiff] is illiterate, and hardly could be expected to have the capacity to, as the ALJ expected, explore 'the availability of free or reduced cost medical services.'"  (Id. (quoting Tr. 18).)  Plaintiff's contentions fall short.

As an initial matter, Plaintiff misframes the issue as one involving "non-compliance" with "prescribed treatment" under SSR 82-59.  (Id. at 20.)  "SSR 82-59 only applies to '[a]n individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source.'"  Myers v. Commissioner of Soc. Sec. Admin., 456 F. App'x 230, 232 (4th Cir. 2011) (quoting SSR 82-59, 1982 WL 31384, at *1).  Here, the ALJ did not conclude that Plaintiff otherwise qualified as disabled, but unjustifiably failed to follow prescribed treatment that could restore his ability to work.  (See Tr. 15-21.)  Rather, the ALJ found that Plaintiff's failure to seek treatment for his back and foot pain diminished his credibility.  (See Tr. 17-18.)   Thus, "SSR 82-59 does not apply" to the ALJ's reasoning.  Flores v. Colvin, No. 1:13CV513, 2016 WL 831941, at *5 (M.D.N.C. Feb. 29, 2016) (unpublished) (Webster, M.J.), recommendation adopted, 2016 WL 3102023 (M.D.N.C. June 2, 2016) (unpublished) (Schroeder, J.).

Social Security Ruling 96-7p, <u>Policy Interpretation Ruling</u>
<u>Titles II and XVI: Evaluation of Symptoms in Disability Claims:</u>
<u>Assessing the Credibility of an Individual's Statements</u>, 1996 WL
374186 (July 2, 1996) ("SSR 96-7p"), provides the applicable
standard, and prohibits an ALJ from "draw[ing] any inferences about
an individual's symptoms and their functional effects from a
failure to seek or pursue regular medical treatment without first
<u>considering</u> any explanations that the individual may provide, or
other information in the case record, that may explain infrequent
or irregular medical visits or failure to seek medical treatment."
SSR 96-7p, 1996 WL 374186, at *7 (emphasis added).[15]

In this case, the ALJ complied with SSR 96-7p in evaluating
Plaintiff's subjective complaints.   At the hearing, the ALJ
elicited testimony from Plaintiff that he did not seek treatment
for his back because he lacked both transportation and health
insurance.   (<u>See</u> Tr. 33-34.)   In the ALJ's decision, she
specifically <u>considered</u> Plaintiff's explanations for his failure to

_____

[15] Applicable to ALJ decisions on or after March 28, 2016, the Social Security
Administration superceded SSR 96-7p with Social Security Ruling 16-3p, <u>Policy</u>
<u>Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability</u>
<u>Claims</u>, 2017 WL 5180304, at *13 n.27 (Oct. 25, 2017).   The new ruling
"eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy,
as [the] regulations do not use this term."   <u>Id.</u> at *1.   The ruling "clarif[ies]
that subjective symptom evaluation is not an examination of the individual's
character," <u>id.</u>, and "offer[s] additional guidance to [ALJs] on regulatory
implementation problems that have been identified since [the publishing of] SSR
96-7p," <u>id.</u> at *1 n.1.   The ALJ's decision in this case predates the effective
date of SSR 16-3p (<u>see</u> Tr. 22) and, thus, this Recommendation will apply SSR 96-
7p to Plaintiff's argument regarding the ALJ's subjective symptom evaluation.

seek any treatment for his back and foot pain, but ultimately
rejected those explanations, providing the following rationale:

> After considering the totality of the record, [the ALJ
> is] persuaded that [Plaintiff's] "medically determinable"
> "severe" impairments could at least theoretically be
> expected to produce at least some of the general type of
> subjective symptoms alleged by [Plaintiff]. However,
> [Plaintiff's] testimony as to the specific intensity,
> persistence, and limiting effects of his pain and other
> subjective symptoms is not persuasive in view of the
> inconsistencies in the record. Most significantly,
> [Plaintiff] has maintained no course of regular or, for
> that matter, even intermittent treatment for his
> purported back and foot pain, and he takes no
> prescription medication for treatment of purported pain.
> A claimant's limited use of pain mediation, failure to
> sustain any consistent medical regimen for treatment,
> lack of hospitalizations or emergency room visits, or
> other significant treatment for pain constitutes specific
> evidence which supports an acceptable credibility
> determination that pain and other symptoms are not
> disabling. Hunter v. Sullivan, 993 F.2d 31 (4th Cir.
> 1992). In [Plaintiff's] case, it would be reasonable to
> expect that, at least on occasion, he would seek
> treatment for extreme limitations to which he testified,
> rather than simply endure them in silence month after
> month and year after year. Yet, as noted, he has sought
> no treatment whatsoever for purported back and foot pain.
> Although he testified that he had not sought treatment
> because he had no transportation and because he could not
> afford treatment in any event, I am not persuaded by his
> testimony. While [Plaintiff] may have some
> transportation issues, it is not persuasive that he
> cannot travel to any medical provider, particularly
> considering that he was able to travel to work, that he
> was able to travel to the consultative examination, and
> that he was able to travel to the hospital for treatment
> of his seizure. Moreover, [Plaintiff] did not testify
> that he was homebound, and it therefore [is] reasonable
> to conclude that he is able to travel to stores to buy
> groceries or, when he was drinking, liquor. The question
> of whether [Plaintiff] could afford treatment is more
> problematic than his alleged transportation difficulties.
> However, there is no indication that [Plaintiff] has
> explored the availability of free or reduced cost medical
> services. That is not to say that such services are

available within a reasonable geographic area, but it is <u>incumbent on [Plaintiff] to explore such availability rather than simply concluding that he cannot pay for any medical care</u>. Furthermore, I note that <u>a hospital emergency room may not refuse care based on an individual's inability to pay for care</u>. Hence, if [Plaintiff] had the extreme pain and functional limitations to which he testified, he could obtain treatment, and it would be reasonable to expect that he would seek treatment, at least on occasion, rather than simply enduring the purported extreme pain and functional limitations. Indeed, <u>[Plaintiff] was not reticent to seek medical treatment when he had a seizure</u>, which indicates that he is willing and able to seek medical treatment, which undermines the credibility of his testimony regarding his failure to seek medical treatment.

(Tr. 17-18 (emphasis added).)

As the language emphasized above shows, the ALJ <u>considered</u> Plaintiff's explanations for his lack of treatment, as required by SSR 96-7p, 1996 WL 374186, at *7, and provided several reasons why she did not accept those explanations. (<u>See</u> Tr. 17-18.)

Plaintiff specifically challenges only the ALJ's assertion that Plaintiff should have "explored the availability of free or reduced cost medical services." (Docket Entry 13 at 22 (quoting Tr. 18).) Plaintiff maintains that, because of his illiteracy, he lacked the capacity to explore affordable medical services. (<u>Id.</u>) That argument fails because, as the ALJ pointed out, Plaintiff remained able, despite his functional illiteracy, to seek medical treatment in the emergency room when he suffered a seizure. (<u>See</u> Tr. 18; <u>see also</u> Tr. 232-486.)

In conclusion, Plaintiff's second issue on review fails as a matter of law.

### III.  CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 12) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 15) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

January 5, 2018